Commonwealth ex rel. The Attorney General *versus* The New York, Lake Erie and Western Railroad Company, et al.

1. In a proceeding by *quo warranto* under the Act of April 26th, 1855, (P. L. 329), to escheat the real estate within the Commonwealth, of a railroad company incorporated under the laws of another state, it is a question of fact for the jury whether under all the evidence in the case the foreign corporation has acquired and is holding the real estate within

the Commonwealth in its own name, through a trustee, in the name of a corporation incorporated under the laws of this Commonwealth purchased and owned by it, or by any other device whatsoever.

2. If a railroad company incorporated under the laws of another state has acquired and holds real estate within this Commonwealth, it is incumbent on the company to show that it has been specially authorized by law to hold such property. In the absence of such proof the acquisition and holding is illegal and subject to escheat under the Act of April 26th, 1855 (P. L. 329).

3. A railroad company incorporated under the laws of another state will not be permitted to circumvent and evade the Act of April 26th, 1855 (P. L. 329), by acquiring and holding real estate within this Commonwealth by any scheme or device whatsoever.

October 7th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Jefferson county :* Of October Term 1886, No. 180.

This was a *quo warranto* issued at the relation of Lewis C. Cassidy, Attorney General of the Commonwealth against the New York, Lake Erie and Western Railroad Company with notice to the Northwestern Mining and Exchange Company to show by what warrant they and each of them held some four thousand acres of coal land in Jefferson county, and to escheat the same to the state.

The facts of the case are sufficiently shown in the opinion of the Supreme Court.

On the trial CORBETT, P. J., charged the jury as follows:

This case will not end with a trial here, and we propose to put it in a shape that it may be fairly brought before the Supreme Court and there determined. We think that in the answers to the points, all the questions in the case will be raised, and, therefore, we do not consider it necessary to make a lengthy charge.

The plaintiff's points are these:

1. That if the Erie Railway Company, a corporation of the state of New York, bought and owned the lands described in the information in the name of its president, and then purchased the charter of the Northwestern Mining and Exchange Company, and caused all the stock to be issued to itself, directly or indirectly, only as a device or cover *to avoid* the escheat imposed by the laws of the state of Pennsylvania, the lands so purchased are subject to escheat by the proceedings in this case, and if the jury so find, their verdict should be for the plaintiff.

We answer this point thus: If the New York, Lake Erie and Western Railroad Company had used the name of another as trustee, or by any device had used even a corporation as a

trustee, and the jury so found, the lands would be liable to escheat; but under the facts in this case, we answer the point in the negative.  Here they used a Pennsylvania charter, and although they virtually paid for all of the stock—giving to certain persons ten shares and using them as directors, we do not think that the lands are subject to escheat.  In other words we think if there was anything vicious in the organization, the plaintiff ought to have proceeded to forfeit the charter or dissolve it.  (First assignment of error.)

2. That if the purchase of the charter of the Northwestern Mining and Exchange Company was made by the Erie Railway Company in aid of its own purposes, and as a mere device under which the Erie Railway Company intended to hold and own the lands in dispute, and under which the New York, Lake Erie and Western Railroad Company, in pursuance of such purpose, holds and enjoys the lands in dispute, such purpose and use of the name of the Northwestern Mining and Exchange Company will not defeat an escheat in this case, and if the jury so find, their verdict should be for the plaintiff.

We decline to answer this point in the affirmative for the reasons set forth in answer to the first point.  (Third assignment of error.)

3. If the jury find that the New York, Lake Erie and Western Railroad Company is the actual owner of the lands described in the information, and the use of the name of the Northwestern Mining and Exchange Company, and the stock claimed to be issued thereby is only colorable and a device to cover and conceal the true ownership, the verdict of the jury should be for the plaintiff.

We decline to answer that point in the affirmative for the reasons set forth in the answer to the first point.  (Fifth assignment of error.)

The defendant's points ask us to charge you as follows :

1. That the evidence shows that the Northwestern Mining and Exchange Company acquired, and now holds in its own name both the legal and equitable title to the lands in controversy.

We answer this point in the affirmative.  (Seventh assignment of error.)

2. That the acquiring and holding of the stock of the Northwestern Mining and Exchange Company, in whole or in part, by the New York, Lake Erie and Western Railroad Company, is not an acquiring and holding by the latter company in its corporate name, or by or through any trustee or device whatsoever, of the lands in controversy within the meaning of the 5th section of the Act of 26th April, 1855,

upon which this return is based, and, therefore, the verdict of the jury must be for the defendants.

We answer this point in the affirmative. (Ninth assignment of error.)

Gentlemen, we do not know any question of fact to go to you, because we think the facts insufficient to carry the case to the jury, under the defendants' points, and we answer it thus, so that the questions of law may fully be raised on a writ of error.

Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ, assigning for error, *inter alia*, the answer of the court to the points of the plaintiff and of the defendants as shown above.

*Silas W. Pettit*, (*Lewis C. Cassidy, Attorney General, Robert Snodgrass, Deputy Attorney General, John R. Read, George A. Jenks* and *William P. Jenks* with him), for plaintiff in error.—

The errors assigned are in effect that this question of the actual as compared with the apparent ownership, was not submitted to the jury. Under the pleadings it became a question of fact for the jury to determine where the actual ownership was, and as the uncontradicted evidence fully sustained the allegations of the information and contradicted the denials of the plea as to the fact and purpose of such ownership, the question should have been submitted to them.

The general rule clearly is, that a corporation cannot become a stockholder in another corporation unless by power specifically granted by its charter or necessarily implied in it, especially if it be for the purpose of controlling or affecting the management of the other corporation, and *a fortiori*, if for the purpose of thereby engaging in a business other than, and additional to, that for which it is incorporated, a rule which is fully sustained by Green's Brice's Ultra Vires, 91, note (b.); Ernest *v.* Nichols, 6 H. of L. Cases, 401; Sumner *v.* Marcy, 3 Wood. & M., 105; Bank *v.* Agency Co., 24 Conn., 159; Central R. R. Co. *v.* Collins, 40 Ga., 582; Hazlehurst *v.* Savannah, 43 Ga., 13; Solomon *v.* Laing, 14 Jur., 279.

The defendant however, admitting in effect that it needs to show such authority, asserts that it has it in the Act of 15th April, 1869 (P. L. 32). This however furnishes no warrant for the purchase of a charter as was done in this case.

It is well settled that if the title was defeasible it has remained so ever since, and no subsequent conveyances of the title—more especially merely colorable transfers, as were those in this case—will validate it, or bar the right of the Commonwealth to escheat the land: Leazure *v.* Hillegas, 8 S.

& R., 313; Goundie *v.* Water Co., 7 Barr, 233; Rubeck *v.* Gardner, 7 Watts, 455.

As to the question of legislative authority to the New York, Lake Erie and Western Railroad Company to hold the lands in controversy, it is respectfully submitted:

(*a.*) That Dr. Early held said lands after the execution of the articles of July 19th, 1873, in trust for the Erie Railway Company.

(*b.*) That thereupon the said lands became liable to escheat at the suit of the commonwealth, and such defeasibility of the title has not been cured by the contrivance subsequently adopted for that purpose, because:

(*c.*) The acquisition of the charter of the Mining Company by the Railway Company was unauthorized by law, and not within the authority conferred by the Act of 15th April, 1869, but even if authorized, because:

(*d.*) The use of the name and charter of the Northwestern Mining and Exchange Company was a mere sham and device, and no real or actual change in the ownership was effected thereby; that is to say, no conveyance was actually made.

A common carrier is prohibited by fifth section of Article XVII of the Constitution of this Commonwealth from engaging in any other business.

This state can impose this restriction upon a foreign corporation entering and doing business in the state : Doyle *v.* Continental Ins. Co., 94 U. S., 535–542; Bank of Augusta *v.* Earle, 13 Peters, 592; Insurance Co. *v.* French, 18 Howard, 404; Paul *v.* Virginia, 8 Wallace, 168; Ducat *v.* Chicago, 10 Wallace, 410; Green's Brice's Ultra Vires, p. 4, note (*a*).

The acquisition and holding of real estate within this state by the New York, Lake Erie and Western Railroad company, is contrary to law and to the constitution and are escheatable in this proceeding under the Act of April 21st, 1855, P. L., 329.

*John G. Hall* and *George W. Biddle, (George Biddle* with them), for defendants in error.—First. No interest accrued under the contract between Peter H. Watson and Charles R. Early of August 19th, 1873, or under the conveyance of July 12th, 1874, in any of the lands mentioned in the information, to the New York, Lake Erie and Western Railroad Company; nor did that company hold any interest in said lands at the time of the filing of the information or at any other time.

1. A resulting trust arises only by operation of law when it is the intention of the parties to create one. The facts show the intention of the parties to have been that the lands were intended to be conveyed to the Northwestern Mining and Exchange Company.

[Commonwealth v. N. Y., L. E. & W. R. R. Co.]

2. As thirty-nine fortieths of the price paid under the contract for the land was paid by the Mining and Exchange Company itself, a resulting trust would, if it arose at all, arise, as to thirty-nine fortieths, for that company.

3. Any defect of title in the Northwestern Mining and Exchange Company has been cured by the Acts of May 8th, 1876, May 22d, 1878, and April 8th, 1881.

(a) Section 10 of Article XVII of the Constitution does not prevent the operations of these Acts, because that article applies only to "railroad, canal, or other transportation companies," to neither of which categories the Northwestern Mining and Exchange Company belongs.

(b) Nor does the Act of May 22d, 1878, prevent the operation of these curative Acts, because the Act of 1881 was subsequently passed without any qualification.

Second. The holding of the stock of the Northwestern Mining and Exchange Company by the New York, Lake Erie and Western Railroad Company, a corporation incorporated by the state of New York, does not constitute any holding by the railroad company of lands owned by the former company: Case of Pullman P. C. Co. v. Mo. Pac. Ry. Co., 11 Fed. Rep., 634.

Third. The operation of section 5, Article XVII of the Constitution, upon the rights of the New York, Lake Erie and Western Railroad Company in land owned by the Northwestern Mining and Exchange Company is not raised in the present record; because the railroad is averred by the information to be a foreign corporation, running a line of railroad outside of the state.

Fourth. In the present case no escheat or forfeiture of lands of the defendant corporation can be declared under the Act of April 26th, 1865, under which alone this proceeding is instituted.

Mr. Justice STERRETT delivered the opinion of the court, January 3d, 1886.

It is contended the testimony before the jury would have warranted them in finding the issues of fact in favor of the Commonwealth, and hence the learned court erred in directing a verdict for defendants. It is important therefore to notice in the outset the questions of fact raised by the pleadings.

The first count of the information sets forth in substance that prior to committing the grievances complained of, The New York, Lake Erie and Western Railroad Company, formerly The Erie Railway Company, a corporation of the state of New York, constructed, maintained and operated, and yet maintains and operates a line of railroad from Jersey City,

New Jersey, to Dunkirk, New York, and was and yet is engaged in the business of a common carrier on said road; that as such corporation the company was and is prohibited by the laws of this Commonwealth from acquiring and holding therein any lands in the name of, or by or through any trustee, or by any device whatsoever, and by said laws it was and is expressly declared that any lands so purchased and acquired shall escheat to the commonwealth; that on July 12th, 1873, said company in its former name of "The Erie Railway Company," purchased and acquired certain lands in Jefferson county in this Commonwealth, in the name of Charles R. Early, who held the same in trust for the use, benefit and behoof of said company; that said lands were acquired and purchased by said company without any charter, grant or right whatsoever so to do, and contrary to the express prohibition of the laws of this Commonwealth; and, that by reason of the premises said lands became and were escheated, etc.

After setting forth the corporate existence, business, &c., of the railroad company defendant, the prohibition against acquiring and holding lands in this Commonwealth, and the provisions of an Act, entitled "An Act to incorporate the Northwestern Mining and Exchange Company of Erie, Pennsylvania," approved March 15th, 1872, the second count substantially charges that in "November, 1873, said New York, Lake Erie and Western Railroad Company, formerly The Erie Railway Company, without any authority of law it thereunto enabling, acquired all the capital stock of said Northwestern Mining and Exchange Company, and from thence hitherto has and yet does own, hold or control the same:" that in July, 1874, Charles R. Early and wife conveyed to said Northwestern Mining and Exchange Company the lands which The Erie Railway Company, now the defendant railroad company, had theretofore purchased and held in the name of said Early, being the same lands mentioned and described in the first count of the information; that the defendant railroad company being a foreign corporation, engaged in the business of a common carrier, acquired the capital stock of said Mining and Exchange Company for the purpose of enabling it to hold the lands which had been so as aforesaid acquired and held in the name of said Early, in violation and evasion of the laws of this commonwealth, and so that defendant railroad company might, in like evasion and violation of said laws, hold lands in this commonwealth not necessary for carrying on its business as a common carrier, and also, in like evasion and violation of said laws, engage within this commonwealth in mining articles for transportation over its works, and in business other than that of a common carrier; that under color and by pretended au-

thority of said Act of March 15th, 1872, the defendant railroad company, in violation and attempted evasion of the constitution, laws and declared public policy of this commonwealth, has acquired and yet holds said lands, not necessary for carrying on its business of common carrier, and has and yet does engage in and carry on, within this commonwealth, business other than that of a common carrier, including the mining of coal for transportation over its works; that all said acts are contrary to the prerogative of this commonwealth, "and an unlawful encroachment on its power and authority, done in contempt and disregard of the repeated acts of its people and General Assembly, positively prohibiting the same;" and that, by reason of the premises, said lands became and are forfeited and escheated to said commonwealth.

In their plea, defendants substantially deny the several illegal acts charged in the information. They say: "The New York, Lake Erie and Western Railroad Company does not hold the lands, or any of them, mentioned or described in the information, either directly in the corporate name, or by or through any trustee or other device whatsoever; that each and all of said lands are owned and held by the Northwestern Mining and Exchange Company, the other defendant in this action, directly in its corporate name"; that the said Northwestern Mining and Exchange Company, duly incorporated under the Act of March 15th, 1872, has and is authorized to acquire and hold the lands mentioned and described in the information and complaint of the plaintiff, as well as to mine coal and other minerals, and deal in the same; "that a large majority of the stock of the Northwestern Mining and Exchange Company is held and controlled by the New York, Lake Erie and Western Railroad Company, a corporation organized under the laws of the state of New York and existing under the laws of that state as well as under the laws of Pennsylvania, and that a small minority of said stock is owned by sundry citizens of Pennsylvania and New York, but the defendants are advised and believe that the holding of said stock as aforesaid is not in violation of the laws of Pennsylvania."

"And defendants deny that said lands are held as aforesaid for the purpose of enabling the New York, Lake Erie and Western Railroad Company to engage in business other than that of a common carrier, and deny that the products of said lands are intended for transportation over said railroad of said company in Pennsylvania."

"And for further plea to the first count of said information, the defendants say, the New York, Lake Erie and Western Railroad Company did not purchase and acquire the lands in said count mentioned in the name of Charles R. Early as trus-

tee; that the said Charles R. Early purchased said lands from sundry individuals in his own right and for his own use and benefit, and subsequently, to wit, the 13th day of July, 1874, conveyed the same to the Northwestern Mining and Exchange Company aforesaid at considerable advance in price, thereby making large profits to himself."

They further say, " they have done no act contrary to the prerogative of Pennsylvania as an independent state, and have committed no unlawful encroachment upon its power and authority, or any cause of forfeiture of the lands of the Northwestern Mining and Exchange Company aforesaid, but have in all things complied with the laws of said Commonwealth."

It will be observed that the burden of the Commonwealth's complaint is not that there was anything wrong, *per se*, in Dr. Early purchasing large bodies of coal and timber lands, and afterwards conveying them to the Northwestern Mining and Exchange Company, for the purpose of developing the same and transporting the product; nor in the Erie Railway Company, or its successor, the defendant railroad company, in good faith and for a legitimate purpose, investing part of its capital in stock of the Mining and Exchange Company; but the *gravamen* of the complaint is, that said lands were purchased at the instance and for the benefit of the Erie Railway Company, and held in trust for it; that afterward said railway company, for the purpose of better enabling it to use and control said lands and enjoy the full benefit of the same without appearing to be the beneficial owner thereof, purchased the charter of the Northwestern Mining and Exchange Company and caused said lands to be conveyed to it; that all this was done not in good faith nor for any legitimate object, but for the purpose of concealing the real ownership of said lands, and thus evading and violating the laws of this Commonwealth prohibiting the holding of lands therein for the purposes for which said lands were purchased, owned, held and used; and that defendant railroad company, as successor of the Erie Railway Company, in like evasion and violation of said laws, acquired, holds, controls and uses said lands in a manner and for purposes forbidden by law.

To maintain the issue on the part of the Commonwealth, the Attorney General introduced testimony tending to prove substantially all the material allegations of fact put in issue by the pleadings. Among other things, he put in evidence the contract of July 19th, 1873, between Dr. Early and Mr. Watson, then president of the Erie Railway Company, embracing over 20,000 acres of coal lands, including the lands in question; and, in connection therewith, proved by Dr. Early and others that in the transaction Mr. Watson acted for and on

behalf of the railroad company, giving as a reason for using his name in the contract, "that it must not be known the Erie Railway Company was purchasing mineral or mining property in Pennsylvania," etc. Dr. Early also testified in substance that the consideration for the lands was paid or secured by the railroad company. In short, that the company, through his agency, purchased and paid for the lands. He also testified in regard to the purchase of the charter of the Northwestern Mining and Exchange Company, that the attorney acting for the railroad company declared they must have "a charter to cover the lands purchased—the bituminous coal lands,"—as the company could not hold them in its own name, "nor could Mr. Watson hold them as trustee." The result was that the charter of the Northwestern Mining and Exchange Company, then in the market for sale, was selected, and the witness, Dr. Early, was deputed to purchase it, and did buy it for the railway company for $5,000. The same witness then testified, in detail, how the directors of the Mining and Exchange Company resigned, and their places were immediately filled by the election of persons who were either officers or employés of the Erie Railway company, the then owner and holder of all the stock ordered to be issued by the new board of directors of the Mining and Exchange company, except ten shares given without consideration to each of the directors to render them eligible. These shares, or certificates of stock, were indorsed in blank and deposited with the treasurer of the railway company; so that, in fact, that corporation actually owned and controlled all the stock of the Northwestern Mining and Exchange Company, whose charter it is alleged to have purchased for the purpose of making it the mere repository of the legal title to the lands in question. The testimony further shows that the lands were conveyed by Dr. Early to the Mining and Exchange Company, pursuant to an assignment of the contract by Mr. Watson. It also tends to show that the stock of the last mentioned company, representing the lands in question, continued to be held by the Erie Railway Company until all its property, rights, franchises, etc., were sold and subsequently transferred to its successor, the New York, Lake Erie and Western Railroad Company. We might refer at considerable length to other portions of the testimony corroborative of the testimony of Dr. Early, and tending to prove other allegations of fact put in issue by the pleadings, but it is unnecessary; it is sufficient to say that the testimony introduced by the Attorney General tended to prove substantially all the disputed allegations of fact.

The defendants having offered no testimony, the court was requested, on behalf of the Commonwealth, to charge:—

" 1. That if the Erie Railway Company, a corporation of the state of New York, bought and owned the lands described in the information, in the name of its president, and then purchased the charter of the Northwestern Mining and Exchange Company, and caused all the stock to be issued to itself, directly or indirectly, only as a device or cover to avoid the escheat imposed by the laws of the state of Pennsylvania, the lands so purchased are subject to escheat by proceedings in this case; and if the jury so find, their verdict should be for plaintiff."

" 2. That if the purchase of the charter of the Northwestern Mining and Exchange Company in aid of its own purposes, and as a mere device under which the Erie Railway Company intended to hold and own the lands in dispute, and under which the New York, Lake Erie and Western Railway Company, in pursuance of such purpose, holds and enjoys the lands in dispute, such purpose and use of the name of the Northwestern Mining and Exchange Company will not defeat an escheat in this case; and if the jury so find, their verdict should be for the plaintiff."

" 3. If the jury find that the New York, Lake Erie and Western Railroad Company is the actual owner of the lands described in the information, and the use of the name of the Northwestern Mining and Exchange Company, and the stock claimed to be issued thereby is only colorable and a device to cover and conceal the true ownership, the verdict of the jury should be for the plaintiff."

The learned judge refused to affirm either of these propositions for the following reasons, embodied in his answer to the first, viz.: " If the New York, Lake Erie and Western Railroad Company had used the name of another as trustee, or by any device had used even a corporation as trustee, and the jury so found, the lands would be liable to escheat; but, under the facts in this case, we answer the point in the negative. They have used a Pennsylvania charter, and although they virtually paid for all the stock—giving to certain persons ten shares, and using them as directors—we do not think that the lands are subject to escheat. In other words, we think if there is anything vicious in the organization, the plaintiff ought to have proceeded to forfeit the charter or dissolve it."

If we were prepared to concede that mere form is everything and substance nothing, we might perhaps better appreciate the force of these reasons; but we are unwilling to admit that a transparent device, deliberately planned and executed for the purpose of concealing the true character of the transaction, is entitled to much consideration in a court of justice. The learned judge appears to have thought that, inasmuch as a Pennsylvania charter was purchased by the railroad com-

pany, and the legal title to the lands in question vested in the corporation organized under that charter, the lands are not subject to escheat, notwithstanding the transaction, from its very inception, is shown to be a mere device to cover and conceal the actual ownership of the lands, and thus evade the provisions of the 5th section of the Act of April 26th, 1855, which declares, " that no corporation other than such as shall have been incorporated under the laws of this state, shall . . . . . hereafter acquire and hold any real estate within this commonwealth, directly in the corporate name, or by or through any trustee, *or other device whatsoever*, unless specially authorized to hold such property by the laws of this commonwealth." In this, we think, he was mistaken. If either the organic or statute law of the state can be successfully circumvented and evaded by any device, however ingenious it may be, there would be little or no protection in either.

The plaintiff's propositions were not refused, because the questions of fact they involve are not raised by the pleadings, nor for the reason that the testimony is insufficient to warrant the submission of those questions to the jury. The testimony was therefore for the jury, and they should have been permitted to pass upon it and find the facts.

In defendant's first point, the court was requested to charge, " That the evidence shows the Northwestern Mining and Exchange Company acquired, and now holds in its own name, both the legal and equitable title to the lands in controversy."

In the absence of qualifying facts, which the jury would have been warranted in finding from the testimony before them, this proposition may be regarded as correct; but it was for the jury to inquire and find from the testimony how and for what purpose, and by whom the lands were acquired and held. If they were in fact purchased and owned by the railroad company, and as part of the scheme or device to conceal the true ownership and evade the law above quoted, the railroad company used the Mining and Exchange Company as a mere repository of the legal title, it would be a travesty of justice to hold that the mere outward form of the transaction would preclude inquiry into its real character.

In affirming defendant's second point, the learned judge instructed the jury, " That the acquiring and holding of the stock of the Northwestern Mining and Exchange Company, in whole or in part, by the New York, Lake Erie and Western Railroad Company, is not an acquiring and holding by the latter company in its corporate name, or by or through any trustee or device whatsoever, of the lands in controversy, within the meaning of the 5th section of the Act of April 26th,

1855, upon which this action is based; and therefore the verdict of the jury must be for the defendants."

What has just been said in relation to the first point is applicable to this: whether such acquiring and holding is a " device " within the meaning of the section above quoted, depends largely on qualifying facts, which might have been found by the jury had they been permitted to consider and pass upon the testimony.

If it be true that the railroad company defendant has in fact acquired and holds real estate within this commonwealth, it is incumbent on the company to show that it has been specially authorized by law to hold such property. In the absence of such proof, the acquisition and holding are illegal; and the 9th section of the Act prescribes the remedy, viz.: " All property hereafter acquired and held by persons, corporations or associations, forbidden by this Act to hold the same, or held contrary to the intent of this Act, . . . . . shall escheat to this commonwealth, and upon the same being adjudged to have escheated under proceedings in court by *quo warranto* in all respects as is provided by law in the case of the usurpation of any corporate franchise, the same shall be taken in possession and disposed of," etc.

Neither of the Acts of Assembly referred to by defendants authorizes or sanctions such acquisition and use of real estate as are suggested in the points for charge submitted by the Commonwealth. It is one thing for a railroad company to invest its surplus funds in the stock of another corporation, or to aid a corporation authorized by law to develop the coal, iron or other material interests of the commonwealth, in the manner specified in the Act of April 15th, 1869; but it is another and quite a different thing to purchase and hold real estate contrary to law—to purchase the charter of a mining company, and use it as a mere device to cover and conceal the true ownership of realty, which the law forbids it to acquire or hold in the name of a trustee, or by any "device whatsoever."

We have treated this case as a proceeding under the Act of 1855, without reference to the effect of Sect. 5 of Art. XVII. of the present Constitution upon the rights of the railroad company defendant. There is certainly nothing in that section that can by any possibility be invoked in aid of the defendant's position.

The points submitted by the Commonwealth were clearly warranted by the pleading and evidence, and should have been affirmed.

> Judgment reversed, and a *venire facias de novo* awarded.